J-A13012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.M., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1645 EDA 2019 |

Appeal from the Order Entered March 20, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-0000230-2019

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED JULY 21, 2020**

Appellant, K.M., appeals from the dispositional order entered on March 20, 2019, after he was adjudicated delinquent of unauthorized use of a motor vehicle (hereinafter "unauthorized use"), 18 Pa.C.S. § 3928(a), and criminal conspiracy, 18 Pa.C.S. § 903.  Appellant challenges the sufficiency of the evidence to sustain his adjudications.  We affirm.

The trial court summarized the procedural history and facts of this case, as follows:

> As a result of an incident that occurred on February 9, 2019, [Appellant] was arrested on charges of [unauthorized use], (M-2), 18 Pa.C.S. § 3928([a]), [r]ecklessly [e]ndangering [a]nother [p]erson, (M-2), 18 Pa.C.S. § 2705, [r]eceiving [s]tolen [p]roperty, (F-3), 18 Pa.C.S. § 3925([a]), [f]leeing or [a]ttempting to [e]lude [o]fficer, (M-2), 18 Pa.C.S. § 3733([a]), [t]heft by [u]nlawful [t]aking, (F-3), 18 Pa.C.S. § 3721([a]),

_____

[*] Retired Senior Judge assigned to the Superior Court.

[c]onspiracy, (M-2) 18 Pa.C.S. § 903, and [c]riminal [m]ischief, (M-3), 18 Pa.C.S. § 3304([a])(1).

In the Delinquency Petition filed in the Philadelphia County Court of Common Pleas on February 10, 2019, the Commonwealth alleged that:

On February 9, 2019, at or near 4400 North 6th Street, [Appellant], in concert with another, unlawfully took and operated a motor vehicle, a 2014 White Dodge Avenger, without the consent of the complainant/owner, Danyelle Austin, and with the intent to deprive him (*sic*) thereof. [Appellant], who operated the vehicle, also actively ignored police commands to halt the vehicle by driving erratically and ignoring traffic control devices. [Appellant] also caused damage to another vehicle in the course of the above conduct.

On February 22, 2019, [Appellant] appeared before the Honorable Robert J. Rebstock for an [a]djudicatory [h]earing. After hearing the testimony of the complainant and the arresting police officer, the [c]ourt [adjudicated Appellant delinquent of unauthorized use] (M-2) and [c]onspiracy (M-2)[,] and not [delinquent] of all of the remaining charges. The [c]ourt found [Appellant] was in need of treatment, supervision[,] and rehabilitation[,] and [Appellant] was adjudicated delinquent. The matter of court costs and restitution were left open. The [c]ourt directed that [Appellant] be interviewed by St. Gabriel Hall and Summit Academy for possible placement while he remained in secure detention at the Philadelphia Juvenile Justice Center (RUC). The matter was continued until March 13, 2019, for a Dispositional Review Hearing.

On March 5, 2019, [Appellant] … filed a Petition to Reconsider Finding of Guilt and Adjudication and a Petition to Accept Motion as if Timely Filed.

On March 13, 2019, [Appellant] appeared before the [c]ourt for a [d]ispositional [r]eview [h]earing. The [c]ourt ordered [Appellant] be placed in a [r]esidential [f]acility with the Pennsylvania State Department of Public Welfare[,] which was the least restrictive type of placement that was consistent with the protection of the public and best suited to [Appellant's] treatment, supervision, rehabilitation[,] and welfare. Restitution remained open and the matter was continued until March 20, 2019, for a [d]ispositional [r]eview [h]earing.

On that date, the [c]ourt ordered restitution in the amount of $250.00 for the benefit of the complainant. [Appellant] was formally placed in a [r]esidential [f]acility at Mid-Atlantic Child Care (MAYS) in Luzerne County. This placement was the least restrictive type of placement that was consistent with the protection of the public and best suited to [Appellant's] treatment, supervision, rehabilitation[,] and welfare. The matter was continued until April 3, 2019 for status of transfer.

On April 1, 2019, [Appellant] … filed a Post-Dispositional Motion and Motion to Reconsider Placement. This motion was deemed denied by operation of law on May 1, 2019. (On June 4, 2019, the Clerk of Court entered an Order - Denial By Operation Of Law[,] which denied [Appellant's] Post-Dispositional Motion and Motion to Reconsider Placement that was filed on April 1, 2019.)

Juvenile Court Opinion (JCO), 11/13/19, at 1-4.

While awaiting the order denying his post-dispositional motion, Appellant filed a premature notice of appeal on May 30, 2019. We will treat his notice of appeal as having been filed on June 4, 2019, the day the Clerk of Court entered the order denying his post-dispositional motion by operation of law. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."); *Commonwealth v. Ratushny*, 17 A.3d 1269, 1272 n.4 (Pa. Super. 2011) (treating the appellant's notice of appeal "as having been filed after entry of the order denying post-sentence motions" in accordance with Rule 905(a)(5)).

Appellant thereafter complied with the juvenile court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the court filed a Rule 1925(a) opinion. Herein, Appellant states two issues for our review:

1. Was not the evidence insufficient to sustain a[n adjudication] for unauthorized use … where [A]ppellant was never observed in the driver's seat or with the ignition key, and there is no circumstantial evidence to suggest that he knew the car was stolen or that he was anything other than a mere passenger in the automobile?

2. In the absence of sufficient evidence that Appellant was driving the car, was not the evidence also insufficient to support his [adjudication] for conspiracy[,] given that there is no direct evidence that he entered into an agreement in furtherance of a criminal object, the stolen car had been operated by a key that was not found on his person or in his presence, and the absence of obvious damage to the car runs contrary to any suggestion that [A]ppellant was aware that the vehicle was stolen before the driver initiated flight?

Appellant's Brief at 3.

Both of Appellant's issues challenge the sufficiency of the evidence to support his adjudications of delinquency.

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Appellant first challenges the sufficiency of the evidence to support his adjudication for unauthorized use, which is defined as follows:

**(a) Offense defined.**--A person is guilty of a misdemeanor of the second degree if he operates the automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle of another without consent of the owner.

- 4 -

18 Pa.C.S. § 3928(a). This Court has stated that, "a conviction for unauthorized use … must be predicated on proof that the defendant operated the vehicle without the owner's consent and that the defendant knew or had reason to know that he lacked the owner's permission to operate the vehicle." *Commonwealth v. Carson*, 592 A.2d 1318, 1321 (Pa. Super. 1991).

In this case, the juvenile court found the following evidence sufficient to sustain Appellant's adjudication for unauthorized use:

> At the hearing on February 22, 2019, this [c]ourt heard the testimony of two (2) witnesses. The first witness, Dannyelle Austin, a resident of Northeast Philadelphia, testified that on the evening of February 8, 2019, she and her husband went grocery shopping in his car[,] which they parked in a driveway behind their home when they returned. (NT[,] 2/22/2019[, at] 5.) At that time, her car, a white, 2014 Dodge Avenger with PA license plate HRW-1901, was parked in front of their home. ([*Id.* at] 6.)
>
> After unloading the groceries and checking on their children, Ms. Austin indicated that she and her husband went out to his car about thirty (30) minutes later and noticed that it had clearly been rummaged through. ([*Id.* at] 5.) Her husband's phone was missing and the doors to his vehicle were unlocked. ([*Id.* at] 6[.])
>
> Around 8:00 AM the following morning, Ms. Austin first realized that her car was missing. ([*Id.*]) Apparently, a spare key for her car had been stolen from her husband's car the night before. ([*Id.*]) She immediately called the police to report that her car was stolen. Ms. Austin also reported this theft to her insurance company and her leasing company. ([*Id.* at] 7.) Ms. Austin testified that approximately five (5) hours later, around 1:00 PM - 1:30 PM on the afternoon of February 9, 2019, she was driving with her husband in her neighborhood, when she saw three (3) people driving in her car. ([*Id.*]) She said they called the police again and tried to follow her stolen car. ([*Id.*]) She testified that the other car started to drive erratically, cutting down one-way streets in the wrong direction and she lost it. ([*Id.* at] 8.) Ms. Austin explained that the police were not able to find her car at that time, but she received a call at 2:00 AM Sunday

- 5 -

morning and was told the car had been found. ([*Id.*]) Ms. Austin was unable to retrieve her car on Monday because it had sustained damage to the driver's side door, a tire, a rim, the axle and the center console. ([*Id.*]) The car was towed to a shop and she was driving a rental car. ([*Id.*]) Ms. Austin testified her car was perfectly fine and drivable the last time she saw it. ([*Id.* at] 9.) … [S]he had not given anyone permission to use or damage her car. She testified that she did not know anyone with [Appellant's] … name. ([*Id.*]) Ms. Austin explained that her wallet was in the car at the time of the theft. ([*Id.*]) It was eventually found and returned to her by a woman who lived in the area where she chased the stolen vehicle, but her money, [and] debit and credit cards were gone. ([*Id.* at] 10.) On cross-examination, Ms. Austin testified that she unable to identify any of the three (3) people who were riding in her car on February 9, 2019. ([*Id.* at] 13.)

The second witness to testify was Police Officer James Butler, … [who is] assigned to the Philadelphia Police Department's Highway Patrol Unit. ([*Id.* at] 15.) Officer Butler testified that on the evening of February 9, 2019, around 9:00 PM[,] he was on duty near the intersection of Fifth Street and Fisher Avenue in Philadelphia. ([*Id.* at] 16.) He explained that he was patrolling in a marked police car in full uniform. ([*Id.* at] 16-17.) He indicated that he stopped at a traffic light on Fifth Street, when a white vehicle two cars ahead made an illegal left hand turn onto Fisher Avenue. ([*Id.* at] 17.) Officer Butler activated his lights and siren to follow the white car west on Fisher Avenue while his partner entered the Pennsylvania license plate number, HRW-1901, into the NCIC computer, which revealed that the white car was stolen. ([*Id.* at] 18-19.)

Officer Butler testified that he followed the white car as it made a left turn onto Fisher Avenue then a left turn onto Sixth Street where it briefly pulled over then continued at a high rate of speed for about five (5) blocks until it reached Roosevelt Boulevard. ([*Id.* at] 17-19.) The officer testified that the driver of the white vehicle made a right turn onto … Roosevelt Boulevard, went three blocks to Ninth Street then made a left-hand turn against a red light[,] crossing approximately ten (10) lanes of traffic. ([*Id.* at] 19) The officer noted that all surrounding traffic came to a screeching halt to avoid a collision. The officer testified that, after clearing the intersection, he saw the white car continue south on Ninth Street and make a left-hand turn onto Cayuga Street. Officer Butler explained that he was seconds behind the white vehicle when it turned back on to Sixth Street and came to

rest facing north in the southbound lanes of travel on the 4400 block of North Sixth Street. ([*Id.* at] 19-20, 23-25.) The officer exited his police car on foot and approached the vehicle when a black male exited the rear passenger door and fled northbound on Sixth Street. ([*Id.* at] 20.) Officer Butler's partner pursued the runner while he apprehended the two (2) men inside the 2014 white Dodge Avenger, Pennsylvania license plate number HRW-1901. ([*Id.* at] 20-21.)

Officer Butler testified that [Appellant], K.M., was in the front seat sitting across the center console, not actually sitting in a seat, while another black male, the [c]o[-]defendant, was in the back seat. ([*Id.* at] 20.) Officer Butler noted that no one else was in the front seat and the car came to rest so close to parked cars that it wasn't possible to open the doors on the front driver's side of the car. ([*Id.* at] 25[.]) Officer Butler explained that during the chase the driver of the white vehicle ignored all traffic control devices, stop signs and traffic lights. ([*Id.* at] 21.)

On cross-examination, Officer Butler testified that he could not identify the driver during the chase[,] nor did he recover keys on [Appellant] when he was arrested. ([*Id.* at] 33.) He explained that he [did not] know if there were keys in the vehicle. ([*Id.* at] 32.) Officer Butler confirmed that he gave a statement to a detective following the chase and that statement was marked as Defense Exhibit 1. ([*Id.* at] 29.) Officer Butler acknowledged that the statement indicates that he told the detective two (2) unknown black males fled the vehicle when it finally stopped. ([*Id.* at] 31.)[] However, Officer Butler testified that he [did not] know why the statement indicated that he said two males fled the vehicle when he told the detective only one male exited through the right rear passenger door and his partner pursued that individual. ([*Id.* at] 32.) … Counsel [for the parties] … stipulated that [Appellant's] mother was present and, if called as a character witness, [she] would testify that [Appellant] is a law-abiding and honest individual. ([*Id.* at] 39.)

JCO at 5-9.

On appeal, Appellant insists that this evidence failed to prove that he committed the offense of unauthorized use. He stresses that he was never seen driving the vehicle, and although he was sitting close to the driver's seat

when Officer Butler approached the car, "it cannot be known whether other persons bailed out of the car as it mounted the curb out of sight of the officers." Appellant's Brief at 13 (footnote omitted). Appellant also notes that the key to the car was not found in his possession. Without sufficient proof that he drove the car, Appellant contends that the Commonwealth failed to establish that he knew the car was stolen. He notes that he did not run from the police, and no other evidence proved that he, as a passenger, was aware that the driver was operating the car without the authority of its owner. Accordingly, he maintains that his adjudication for unauthorized use must be reversed.

We disagree. First, the Commonwealth presented sufficient circumstantial proof that Appellant was the driver of the car. Officer Butler testified that he was only seconds behind the stolen vehicle as it came to a stop. He saw one male flee from the rear passenger door. When Officer Butler approached the car, one man was sitting in the backseat, and Appellant was sitting on the console between the driver and front-passenger seats. The car had stopped too close to parked cars for its driver's side door to open; therefore, no one could have fled from that side of the car. Moreover, there was no logical reason for Appellant to have been moving from the passenger seat to the driver's side. Consequently, the evidence was sufficient to circumstantially prove that Appellant had been sitting in the driver's seat during the high speed chase.

Because the evidence demonstrated that Appellant was the driver of the vehicle, it was also sufficient to prove that he knew he was not authorized to use the car. In **Carson**, we explained:

> [T]he requisite knowledge that the car was stolen can be shown entirely through circumstantial evidence. While it is clear that mere possession without more is insufficient to show that the defendant knew or should have known that the property was stolen, other facts can make the inference of guilty knowledge reasonable, even compelling. Such circumstances include but are not limited to the unexplained possession of recently stolen property, flight from the police or other evidence indicating an attempt to avoid capture and the condition of the property indicating a theft.

**See Carson**, 592 A.2d at 1321.

In this case, Appellant led Officer Butler and his partner on a dangerous, high-speed chase. The officers were in a marked police car with lights and sirens activated. Additionally, Appellant had no explanation for his possession of the recently-stolen vehicle. We conclude that these facts were sufficient to prove that Appellant knew he was not authorized to use the car. Accordingly, his adjudication for unauthorized use was supported by sufficient evidence.

The same is true for Appellant's conspiracy adjudication.

> To convict [a defendant] of criminal conspiracy, the evidence must establish that the defendant entered an agreement with another person to commit or aid in the commission of an unlawful act, that the conspirators acted with a shared criminal intent, and that an overt act was done in furtherance of the conspiracy. 18 Pa.C.S.[] § 903. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. An agreement sufficient to establish a conspiracy can be inferred from a variety of circumstances including, but not limited to, the relation between

the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode.

***Commonwealth v. Saunders***, 946 A.2d 776, 781 (Pa. Super. 2008) (citation omitted).

Here, Appellant contends that the evidence failed to prove that he conspired to steal the car or use it without authorization. He insists that he "was merely present in a stolen car[,]" and claims that "he never evidenced a consciousness of guilt" or "join[ed] in the conduct of another that might have suggested guilt." Appellant's Brief at 22. Appellant also argues that even if the evidence was sufficient to prove his unauthorized use of the car, there was "no evidence any of the passengers knew, let alone agreed, to possession or control of a stolen automobile prior to the driver of the car taking flight. Nor is there evidence that the passengers agreed to flee from the police." ***Id.*** Therefore, he concludes that his conspiracy adjudication must be reversed.

While admittedly a closer issue than Appellant's first claim, we are nevertheless compelled to affirm his adjudication for conspiracy. As the Commonwealth observes:

> The unknown third passenger fled on foot as officers approached. As discussed above, flight from police supports an inference of guilty knowledge. ***Carson***, 592 A.2d at 1321. Both [Appellant] and the passenger acted in ways that suggested they knew the car was stolen and they did not have permission to operate it. They were seen in a stolen car together that led police on a high-speed chase before it crashed and the passenger fled on foot. This was sufficient for a fact-finder to reasonably infer that there was a criminal agreement between [Appellant] and the passenger and [to] find [Appellant] guilty of conspiracy.

Commonwealth's Brief at 9. We are compelled to agree. Thus, we affirm Appellant's adjudication for conspiracy.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/20